**AMERICAN MINING CONGRESS, Petitioner,**

v.

**UNITED STATES NUCLEAR REGULATORY COMMISSION and the United States of America, Respondents.**

**QUIVIRA MINING COMPANY, Kerr–McGee Chemical Corporation, and Homestake Mining Company of California, Petitioners,**

v.

**UNITED STATES NUCLEAR REGULATORY COMMISSION and the United States of America, Respondents.**

Nos. 88–1040, 88–1041.

United States Court of Appeals, Tenth Circuit.

April 25, 1990.

Richard A. Meserve of Covington & Burling (Peter J. Nickles and Sonya D. Winner of Covington & Burling, Washington, D.C., and Michael Yesley of Stephenson, Carpenter, Crout & Olmsted, Santa Fe, N.M., with him on the brief), for petitioners.

E. Neil Jensen, Atty. (William H. Briggs, Jr., Sol., and E. Leo Slaggie, Deputy Sol., Washington, D.C., with him on the brief), for U.S. Nuclear Regulatory Com'n, respondent.

Before SEYMOUR and McWILLIAMS, Circuit Judges, and PHILLIPS, District Judge.*

* Honorable Layn R. Phillips, United States District Judge for the Western District of Okla-

McWILLIAMS, Circuit Judge.

Pursuant to 42 U.S.C. § 2239(b) and 28 U.S.C. § 2342(4), the American Mining Congress (No. 88–1040) and Quivira Mining Company, Kerr–McGee Chemical Corporation and Homestake Mining Company of California (No. 88–1041) seek judicial review of certain amendments to the Nuclear Regulatory Commission's "Criteria Relating to the Operation of Uranium Mills and the Disposition of Tailings or Waste Produced by the Extraction or Concentration of Source Material from Ores Processed Primarily for Their Source Material Content." The "Criteria" are published at 10 C.F.R. Part 40, Appendix A, and are hereinafter referred to as "Criteria" or "Appendix A Criteria." The amendments challenged in the present proceeding concern measures required to be taken in the management and disposal of uranium mill tailings to avoid contamination of groundwater and are published at 52 Fed.Reg. 43,553 (1987). In the present proceeding, we are not writing on a clean slate, and we shall first review prior proceedings in this court which bear on the present controversy.

The Appendix A Criteria were initially promulgated by the Nuclear Regulatory Commission (NRC) on October 3, 1980, pursuant to Title II of the Uranium Mill Tailings Radiation Control Act of 1978 (UMTRCA), Pub.L. No. 95–604, 92 Stat. 3021, as amended, 42 U.S.C. § 7901, et seq. Under the UMTRCA, regulatory authority is divided among three federal agencies. The Environmental Protection Agency (EPA) is directed to develop "standards of general application . . . for the protection of the public health, safety and the environment from radiological and nonradiological hazards associated with [uranium mill tailings]." 42 U.S.C. § 2022. The Department of Energy is directed to provide for the decommissioning of all "inactive sites" (i.e., uranium tailings sites no longer under NRC license, in accordance with EPA standards). 42 U.S.C. § 7918(a)(1). Thirdly, NRC is charged with the duty of insuring

homa, sitting by designation.

that the management of any by-product material at "active sites" (i.e., sites currently under NRC license and new sites licensed in the future), is carried out in such manner as conforms to applicable general standards promulgated by the EPA under 42 U.S.C. § 2022, and, in connection therewith, NRC is authorized to promulgate rules and regulations to accomplish this. 42 U.S.C. § 2114. We are here concerned with EPA and NRC.

Acting pursuant to congressional mandate, the EPA promulgated standards on September 30, 1983. Immediately thereafter a number of mining companies and their trade association, the American Mining Congress, sought and obtained judicial review by this court of those standards. On September 5, 1985, we upheld the standards. *See American Mining Congress v. Thomas,* 772 F.2d 640 (10th Cir.1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 718 (1986); *(American Mining Congress II). See also American Mining Congress v. Thomas,* 772 F.2d 617 (10th Cir.1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 718 (1986) *(American Mining Congress I ).*

On November 26, 1984, the NRC published a notice of proposed rulemaking to conform the Appendix A Criteria to and with the EPA standards promulgated on September 30, 1983. After hearings, the NRC on October 16, 1985, promulgated amendments to the Appendix A Criteria. Quivira Mining Company, Kerr–McGee Chemical Corporation, and Homestake Mining Company of California, petitioners in the present proceeding, along with United Nuclear Corporation, filed a petition in this court to review the 1985 revised or amended criteria.

On January 27, 1989, this court upheld the 1985 NRC regulation and, in so doing, rejected many of the arguments made by petitioners in the present proceeding. *See Quivira Mining Company, et al. v. United States Nuclear Regulatory Commission,* 866 F.2d 1246 (10th Cir.1989) *(Quivira); see also Environmental Defense Fund v. United States Nuclear Regula-*

*tory Commission,* 866 F.2d 1263 (10th Cir. 1989).

On November 13, 1987, the NRC promulgated additional amendments to the Appendix A Criteria, and it is those amendments which the petitioners challenge in the present proceeding. The American Mining Congress, petitioner in No. 88–1040, has joined in the brief filed by the petitioners in No. 88–1041. The briefs in the instant proceeding were filed before the filing of our opinion in *Quivira,* which was filed January 27, 1989. The present cases were orally argued before this panel on September 25, 1989, and the effect of *Quivira* on the present case was discussed then.

■ Petitioners' principal argument is that NRC did not perform a cost-benefit analysis before promulgating the 1987 amendments to the Criteria. Counsel states that 42 U.S.C. § 2114(a)(1) requires NRC in its management of uranium mill tailings to "tak[e] into account the risk to the public health, safety, and the environment, with due consideration of the economic costs...." NRC's counter argument is that under 42 U.S.C. § 2114(a)(2) it must "conform" any regulations concerning the management of mill tailings to EPA's "standards" and, under the statute, is not free to reject an EPA standard on the ground that in its view the cost might be relatively high and the benefit gained only minimal. Moreover, NRC maintains that a separate analysis is not required because the NRC's rulemaking was restricted to the conforming provision of Criterion 5, a mandatory provision of the EPA standards. *See* 52 Fed.Reg. 43,557–58 (1987); 51 Fed.Reg. 24,703 and 24,704 (1986). Be that as it may, we believe that this matter is governed by *Quivira.*

In *Quivira,* we stated that "Congress did not intend to free the NRC altogether from cost-benefit analysis; rather, it intended the NRC to perform cost-benefit rationalization for the 1985 Criteria." Cost-benefit rationalization is a looser approach that requires the agency only to consider and compare the costs and benefits of approaches and to choose an approach in which costs and benefits are reasonably

related to Congress's intent. *Quivira*, 866 F.2d at 1250, *quoting, American Mining Congress I*, 772 F.2d at 632.

The issue in *Quivira*, then, became whether the statute permitted NRC's interpretation that it may rely upon EPA's cost-benefit analysis when the revisions in the Criteria essentially duplicated the EPA regulation. *Quivira*, 866 F.2d at 1253. In *Quivira*, we held that NRC did not have to "reweigh" costs and benefits for the revised Criteria and could rely upon the EPA's cost-benefit analysis. *Quivira*, 866 F.2d at 1258. Congress requires EPA to consider the cost of its own standards by considering "the risk to the public health, safety, and the environment, the environmental and economic costs of applying such standards, and such other factors as the [EPA] determines to be appropriate." 42 U.S.C. § 2022(b)(1). Moreover, we held that EPA properly conducted cost-benefit factors when it established those standards. *American Mining Congress II*, 772 F.2d at 646. Such a reassessment by the NRC would serve to replicate the EPA's work. In so ruling, we observed that Congress had not spoken on the "precise question at issue," and that NRC's interpretation of the statute was a "permissible construction of the statute," citing *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Quivira*, 866 F.2d at 1258. Therefore, under *Quivira* and *Chevron*, the NRC performed its due consideration obligation here when it conformed to the EPA's regulations it was required to adopt.

■ Petitioners also argue that under the statute NRC has an independent duty to ensure that the regulations it promulgates are consistent with the equivalent regulatory regime under the Solid Waste Disposal Act (SWDA), Subtitle C, as amended, 42 U.S.C. § 6921, *et seq*. In this regard, petitioners' argument, as we understand it, is that under 42 U.S.C. § 2114(a)(3) NRC should conform its regulations to the requirements applicable to the possession, transfer, and disposal of "similar hazardous material" (mining-type wastes) regulated by the EPA under the SWDA (as amended and termed, the Resource Conservation and Recovery Act (RCRA)), but since uranium mill tailings are not "similar" to the hazardous material (chemical-type wastes) dealt with by the EPA under the SWDA, both EPA and NRC erred in applying those requirements to uranium mill tailings.

This matter was considered by us in *American Mining Congress II* where we affirmed EPA's determination that there was sufficient similarity between uranium mill tailings and chemical wastes to warrant application of the same standards to both forms of waste. There the petitioners argued that the EPA's standards under the SWDA were meant for managing high-toxicity, low volume chemical waste, not low-toxicity, high volume mining waste. In *American Mining Congress II*, we noted that the EPA had refused to draw the distinction urged by the petitioners and had imposed its SWDA requirements on uranium mill tailings. That is, even though nonradioactive constituents in uranium mill tailings may be more comparable to hazards in mining wastes than hazards in chemical wastes (*see* 51 Fed.Reg. 24,701 (1986)), the EPA made findings that conditions at tailing impoundments are not sufficiently different from conditions it considered in developing SWDA standards. 48 Fed.Reg. 45,941 (1983). In so doing, we held then and hold now that EPA had acted "permissibly" under the statute. It should be noted, however, that the EPA presently has not finalized its mining wastes rules, so a determination of whether uranium mill tailing waste is now regulated properly would be premature.[1]

---

1. The EPA is currently promulgating rules governing mining wastes under the SWDA. 51 Fed. Reg. 24,496 (1986). In *Environmental Defense Fund v. EPA*, 852 F.2d 1309, 1316 (D.C.Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989), the court declined to fully evaluate the adequacy of EPA's mining waste regulatory efforts, as rules had not been finally promulgated at that juncture. The court there ruled that EPA's determination to regulate extraction and beneficiation of solid mining wastes under Subtitle D of the RCRA instead of

Petitioners' final challenge is to the "liner" requirement in Criteria 5(A), which they say is arbitrary and capricious, because it does not reflect an appropriate relationship between costs and benefits, fails to provide the statutorily required flexibility and opportunity for proposing alternative disposal strategies and is retroactive in application. It should be noted that the NRC adopted the EPA's groundwater standard, almost verbatim, into Criterion 5A of Appendix A. Criteria 5(A) requires all new tailing impoundments, or extensions of old tailing impoundments, to be underlain by a "liner" to prevent any migration of waste out of the impoundment. 40 C.F.R. § 264.221(a). It also provides that a licensee may request an exemption upon a showing that an alternate practice will accomplish the same objective. 40 C.F.R. § 264.221(b). The cost issue of the EPA standards was considered by us and upheld as reasonable in *American Mining Congress I.*

Petitioners maintain that the exemption is allegedly unobtainable and, therefore, inflexible. Clearly, the liner requirement is not inflexible, as it allows the licensee to propose alternatives. Moreover, even if proposals under that standard are impractical, pursuant to Section 84(c), the NRC has authority to consider alternatives to the "A Criteria" which will achieve an equivalent level of conformance, "to the extent practicable." As to the liner requirement being retroactive to any impoundment on which tailings have been or will be placed after September 30, 1983, the NRC merely acted pursuant to its Section 84(a)(2) duty when it conformed to EPA's standards. Moreover, the Section 275(d) requires the NRC to implement and enforce the EPA standards during NRC's licensing activities from the time that EPA promulgated standards to when NRC completes it conformance rulemaking. As such, the NRC complied with its statutory duties in requiring a liner and,

therefore, did not engage in illegal retroactive rulemaking.

Accordingly, we affirm the NRC's 1987 amendments to the Appendix A Criteria against the challenges raised herein.

---

Subtitle C (which addresses hazards of industrial and manufacturing processing wastes), was not an unreasonable agency action. 42 U.S.C. §§ 6921–6939b (1982 and Supp. III, 1985). *Also see Environmental Defense Fund v. EPA*, 852 F.2d 1316 (D.C.Cir.1988), *cert. denied,* 109 S.Ct.

1120, 103 L.Ed.2d 183 (1989). Even thereafter, the EPA has undertaken more rulemakings regarding wastes from the "extraction, beneficiation, and processing of ores and minerals." 54 Fed.Reg. 15,316 (April 17, 1989); and 54 Fed. Reg. 36,592 (Sept. 1, 1989).