902 F.2d 785
 31 ERC 1508, 20 Envtl. L. Rep. 21,076
 ENVIRONMENTAL DEFENSE FUND, and the Southwest Research and
Information Center, Petitioners,
v.
UNITED STATES NUCLEAR REGULATORY COMMISSION, and the United
States of America, Respondents.
 No. 88-1001.
 United States Court of Appeals,
Tenth Circuit.
 April 25, 1990.
 
 Robert E. Yuhnke, Atty., Environmental Defense Fund, Boulder, Colo. (Southwest Research and Information Center, Albuquerque, N.M., with him on the brief), for petitioners.
 E. Neil Jensen, Atty., U.S. Nuclear Regulatory Com'n (William H. Briggs, Jr., Sol., and E. Leo Slaggie, Deputy Sol., with him on the brief), Washington, D.C., for respondents.
 Before SEYMOUR and McWILLIAMS, Circuit Judges, and PHILLIPS, District Judge.*
 McWILLIAMS, Circuit Judge.
 
 
 1
 In the present proceeding, the Environmental Defense Fund (EDF) and the Southwest Research and Information Center have petitioned this court for review of final regulations promulgated by the Nuclear Regulatory Commission (NRC) modifying the requirements governing the licensing of uranium mills and the disposal of uranium mill tailings. The regulations were issued by order of the NRC on November 6, 1987, and were published in the Federal Register on November 13, 1987. 52 Fed.Reg. 43,553. They also petition for mandamus to require further rulemaking by the NRC on this subject. Jurisdiction for the petition for mandamus is based on the Administrative Procedures Act which directs agencies to perform duties assigned by statute "within a reasonable time," 5 U.S.C. Sec. 555(b), and further provides that the "reviewing court shall ... compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. Sec. 706(1).
 
 
 2
 Jurisdiction to review final orders of the NRC lies exclusively in the United States Courts of Appeal. 42 U.S.C. Sec. 2239(b) and 28 U.S.C. Sec. 2342(4). Further, petitions to compel final agency action which would only be reviewable in the United States Courts of Appeal are also within the exclusive jurisdiction of a United States Court of Appeals. Telecommunications Research & Action Center v. FCC, 750 F.2d 70, 76 (D.C.Cir.1984); EDF v. Ruckelshaus, 439 F.2d 584, 593 (D.C.Cir.1971).
 
 
 3
 This is a companion case to American Mining Congress v. United States Nuclear Regulatory Commission, 902 F.2d 781 (10th Cir.1990). Our opinion in that case has been filed simultaneously with this opinion. For other Tenth Circuit cases relating to the management and disposal of uranium mill tailings, see Quivira Mining Company v. United States Nuclear Regulatory Commission, 866 F.2d 1246 (10th Cir.1989); Environmental Defense Fund v. United States Nuclear Regulatory Commission, 866 F.2d 1263 (10th Cir.1989); American Mining Congress v. Thomas, 772 F.2d 640 (10th Cir.1985), cert. denied, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 718 (1986); and American Mining Congress v. Thomas, 772 F.2d 617 (10th Cir.1985), cert. denied, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 718 (1986). For general background material to the present proceeding, read those cases.
 
 
 4
 It is sufficient for present purposes to state that in their petition for review of the 1987 amendments to NRC's "Criteria Relating to the Operation of Uranium Mills and the Disposition of Tailings and Waste Produced by the Extraction and Concentration of Source Materials from Ores Processed Primarily for Their Source Material Content" ("Appendix A Criteria" or "A Criteria"), petitioners claim that NRC did not, as required by statute, conform its "A Criteria" to EPA standards in that the NRC did not adopt three EPA standards for the disposal of mill tailings (i.e., 40 C.F.R. Sec. 264.95 ("point of compliance"); 40 C.F.R. Sec. 264.98 ("detection monitoring program"); and 40 C.F.R. Sec. 192.32(a)(2)(iv) ("500 meter boundary")). The "A Criteria" controls hazards involving uranium mill tailings during mill operations and the closure period.
 
 
 5
 In their petition for mandamus, petitioners seek an order directing NRC to adopt the "missing elements" of EPA's standards governing the "point of compliance," "detection monitoring program," and "500 meter boundary standards," and to otherwise conform its general requirements for the management of uranium tailings to the comparable requirements for similar waste under the Solid Waste Disposal Act (SWDA).
 
 
 6
 NRC admits that it did not entirely incorporate 40 C.F.R. Sec. 264.95 (point of compliance) and 40 C.F.R. Sec. 264.98 (detection monitoring program) in its 1987 amendments. In this regard, it is NRC's position that such were not promulgated by EPA under Section 275(b) of the Atomic Energy Act (AEA) and, that accordingly, NRC is not required to conform thereto. Petitioners' position is that 40 C.F.R. Sec. 264.95 (point of compliance) is referred to in 40 C.F.R. Sec. 192.32(a)(2)(iv) and that 40 C.F.R. Sec. 264.98 (detection monitoring program) is referred to in 40 C.F.R. Sec. 192.32(a)(2)(iii), and accordingly were promulgated by EPA under Section 275(b).[1]
 
 
 7
 In its conformance rules, NRC instead adopted and defined the "point of compliance" as "the site specific location in the uppermost aquifer where the groundwater protection standard must be met." 52 Fed.Reg. 43,563 (1987). NRC stated that it "will also establish the point of compliance and compliance period on a site specific basis through license conditions and orders." Criterion 5B(1), 52 Fed.Reg. 43,563 (1987). It incorporated some requirements of 264.98 (detection monitoring) into its Criterion 7A which appears at 52 Fed.Reg. 43,565 (1987). Standards requiring implementation of a corrective action program if an exceedance of groundwater standards is found at the compliance point is incorporated into NRC's Criterion 5D. 52 Fed.Reg. 43,564 (1987).
 
 
 8
 As to the 500 meter boundary provision provided for in 40 C.F.R. Sec. 192.32(a)(2)(iv), NRC states that the only portion thereof which it has not conformed to is certain language implying that the NRC must seek EPA's concurrence before accepting an alternative concentration limit of a hazardous constituent at a particular site. That is, the NRC's final rule adopts the EPA's 500 meter boundary regulation except insofar as this regulation conflicts with the NRC's independent authority under Section 84(c) of the AEA by requiring the EPA's concurrence in certain site-specific decisions. In connection therewith, NRC adds that in Environmental Defense Fund v. United States Nuclear Regulatory Commission, 866 F.2d 1263, 1268-69 (10th Cir.1989), we recently ruled that NRC did not need EPA's concurrence in approving licenses for uranium mill tailing sites containing site-specific alternatives to EPA's general standards. We are in general accord with NRC's position on these matters.
 
 
 9
 Where an administrative agency is challenged on its construction of a statute which it administers, the Supreme Court, in Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) has defined the role of a reviewing court as follows:
 
 
 10
 When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 11
 "The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." Morton v. Ruiz, 415 U.S. 199, 231 [94 S.Ct. 1055, 1072, 39 L.Ed.2d 270] (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.
 
 
 12
 As indicated, petitioners and the NRC argue different constructions of the statutes here involved. Our study of the matter leads us to conclude that this is an instance where Congress has not directly addressed the precise question at hand and, further, that NRC's construction is a permissible one. In such case, under Chevron, we uphold the agency's construction of the statute which it is charged with administering. In this connection, an unusual degree of deference is due NRC agency actions under the AEA. Indeed, courts have observed that the statutory scheme that the NRC administers is "virtually unique in the degree to which broad responsibility is reposed in the administrative agency, free of close prescription to its charter as to how it shall proceed in achieving statutory objectives." Carstens v. NRC, 742 F.2d 1546, 1551 (D.C.Cir.1984), cert. denied, 471 U.S. 1136, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985), quoting, Siegel v. Atomic Energy Commission, 400 F.2d 778, 783 (D.C.Cir.1968). See, e.g., Duke Power Co. v. NRC, 770 F.2d 386, 390 (4th Cir.1985); Detroit Edison Co. v. NRC, 630 F.2d 450, 453 (6th Cir.1980); Westinghouse Electric Corp. v. NRC, 598 F.2d 759, 771 and n. 47 (3rd Cir.1979). The NRC's resolutions of technical matters, like regulation of uranium and thorium mill tailings, is a technical judgment "within its area of special expertise, at the frontiers of science [where] a reviewing court must generally be at its most deferential." Baltimore Gas & Electric Co. v. NRDC, 462 U.S. 87, 103, 103 S.Ct. 2246, 2255, 76 L.Ed.2d 437 (1983).
 
 
 13
 As mentioned at the outset, petitioners also seek mandamus directing the NRC to promulgate rules and regulations which conform to the three EPA requirements above referred to (i.e., 40 C.F.R. Sec. 264.95, 40 C.F.R. Sec. 264.98, and 40 C.F.R. Sec. 192.32(a)(2)(iv)), and to otherwise perform its obligation under Section 84(a)(3) of the AEA to conform its general requirements for the management of uranium tailings to the comparable "general requirements" for similar waste established by EPA under the SWDA.
 
 
 14
 EDF argues that the language of Section 84(a)(3) contemplates that NRC will manage mill tailings in conformance with the "general requirements" established by the EPA. It suggests that NRC's site-specific licensing orders and staff guidance in NRC's proposed rulemaking which is at 51 Fed.Reg. 24,701 (1986) are not enforceable "requirements" without formal adoption pursuant to rulemaking procedures under the EPA. See Porter County Chapter of Izaak Walton League v. AEC, 533 F.2d 1011, 1016 (7th Cir.1976), cert. denied, 429 U.S. 945, 97 S.Ct. 366, 50 L.Ed.2d 316 (1976); and In the Matter of Vermont Yankee Nuclear Power Corp., 8 A.E.C. 809, 811 (1974). Furthermore, they point out that NRC stated a third round of rulemaking would probably be necessary to comply fully. 52 Fed.Reg. 43,556 (1987).
 
 
 15
 EDF, however, requests a conformance rulemaking now. They say the test is whether "agency action [has been] unlawfully withheld or unreasonably delayed" within the context of the EPA. If so, "[t]he reviewing court shall compel agency action." 5 U.S.C. Sec. 706(1). The lack of action has delayed installation of radon barriers, inter alia, intended to protect the public from high risks of cancer caused by exposure to radon. Pursuant to Cutler v. Hayes, 818 F.2d 879, 897 (D.C.Cir.1987), the court must also estimate the extent to which the delay undermines the statutory scheme, either by frustrating the statutory goal or creating a situation in which the agency is "losing its ability to effectively regulate at all." Id., at 897-98. Moreover, "[d]elays that might be altogether reasonable in the sphere of economic regulation are less tolerable when human lives are at stake." Id., at 989. Where delay adversely affects the health of persons, courts have required expeditious action by agencies. In Public Citizen Health Research Group v. Auchter, 702 F.2d 1150 (D.C.Cir.1983), the court required the completion of a rulemaking to set an occupational exposure standard within one year. Petitioners herein request that same relief.
 
 
 16
 Conversely, NRC perceives that Section 84(a)(3) does not impose a rulemaking requirement on NRC, because the mandate of that provision is to assure comparability of NRC and EPA requirements. The statute does not expressly state that NRC must engage in rulemaking to achieve comparability to EPA's "general requirements." In other sections of the UMTRCA when Congress wanted EPA or NRC to conduct a rulemaking, it used explicit, mandatory language to achieve this objective. See Section 275(b)(1), ("the Administrator shall, by rule, propose and ... promulgate ... standards") and Section 275(f)(3), ("The NRC shall ... amend the October 3, 1980 regulations.") Moreover, NRC already issued three rulemakings on tailings pile management since Section 84(a)(3) was enacted, including NRC's 1980 regulations and NRC rulemakings in 1985 and 1987 to conform to EPA's general standards. Furthermore, NRC's present regulations are a re-promulgation of NRC's 1980 regulations, amended where necessary to achieve conformity with EPA standards. As such, NRC's remaining task is to determine whether its general requirements are now comparable to EPA's SWDA requirements. This comparability assessment is currently in progress.
 
 
 17
 NRC states that its reasons for refraining from a rulemaking now are because of its preference for concentrating NRC resources on site-specific enforcement of EPA's basic standards at existing sites (see 52 Fed.Reg. 43,55 5 (1987)), and because EPA is considering changes in groundwater monitoring rules. Moreover, rulemaking is presently unreasonable because the depressed state of the uranium industry means that construction of new mills and significant production of new tailings piles is improbable so that an immediate rulemaking would be of doubtful value. Furthermore, deferring a rulemaking will conserve NRC resources until EPA completes revisions for the SWDA rules to which NRC's rules must be comparable. It also enables NRC to draw upon its experience with site-specific application of general requirements. As such, NRC maintains that deferring a discretionary rulemaking under Section 84(a)(3) is reasonable, as NRC found that its combination of conformed regulations, policy and guidance, and license conditions can adequately meet the Section 84(a)(3) comparability mandate for the foreseeable future. See 51 Fed.Reg. 24,701 (1986).
 
 
 18
 We are in general accord with NRC's position. The NRC is complying on a reasonable schedule with its Section 84(a)(3) comparability duty in that its comparability study is still in progress and, such being the case, there is no reason for this court to intervene. In the interim, NRC relies on a combination of conformed regulations, policy and guidance, and license conditions at mill tailings sites. Certainly this is not an instance where the agency has taken no action. Mandamus would be premature.
 
 
 19
 Accordingly, we affirm the NRC's 1987 amendments to the Appendix A Criteria against the challenges raised herein. The NRC program for managing uranium mill tailings achieves the same objectives as the EPA regulations. The petition for mandamus is also denied.
 
 
 
 *
 Honorable Layn R. Phillips, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 More specifically, petitioners argue that NRC is obligated under 42 U.S.C. Sec. 2114(a)(2) and 42 U.S.C. Sec. 2022(f)(3) to adopt EPA's point of compliance regulation, 40 C.F.R. Sec. 264.95, as well as the regulation governing detection monitoring program, 40 C.F.R. Sec. 264.98, because EPA imposed these regulations under its Sec. 275(b) authority (42 U.S.C. Sec. 2022) by virtue of the reference made thereto in 40 C.F.R. Sec. 192.32(a)(2)(iv) and 40 C.F.R. Sec. 192.32(a)(2)(iii). NRC argues that EPA did not adopt either the point of compliance or the detection monitoring program under its Sec. 275(b) authority, and, therefore, NRC is not required to adopt either standard. In support of its position, NRC points out that both in its proposed and final rule EPA explicitly excludes Secs. 264.95 and 264.98 from the list of Solid Waste Disposal regulations which EPA identifies as being adopted under its Sec. 275(b) authority, 48 Fed.Reg. 45,942 (1983)